**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MOHAMMAD SOHAIL SALEEM | : | |
| | : | |
| Appellant | : | No. 1553 MDA 2020 |

Appeal from the PCRA Order Entered December 7, 2020
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0000565-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MOHAMMAD SOHAIL SALEEM | : | |
| | : | |
| Appellant | : | No. 1554 MDA 2020 |

Appeal from the PCRA Order Entered December 7, 2020
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0001112-2014

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:               **FILED AUGUST 06, 2021**

Appellant, Mohammad Sohail Saleem, appeals *pro se* from the December 7, 2020, order entered in the Court of Common Pleas of Lebanon County dismissing his petition for writ of *habeas corpus* filed at lower court

---

* Former Justice specially assigned to the Superior Court.

docket numbers CP-38-CR-0000565-2014 ("No. 0565") and CP-38-CR-0001112-2014 ("No. 1112"). After a careful review, we affirm.

This Court has previously set forth the relevant facts and procedural history, in part, as follows:

Appellant was charged at two criminal numbers in March and May of 2014 with multiple counts of sexual assault, indecent assault, and one count of involuntary deviate sexual intercourse involving two different female victims who were his employees of his small business. On April 21, 2015, he entered a negotiated guilty plea to two counts of indecent assault at No. 0565, and one count each of indecent assault and harassment at No. 1112. The remaining charges were non prossed. He was sentenced on June 3, 2015, to two consecutive terms of imprisonment of nine months to four years, and $200 in fines at No. 0565, and a consecutive term of imprisonment of three months to two years in a state correctional facility. The harassment conviction merged for sentencing purposes. In the sentencing order, the court noted that Appellant met the criteria to be classified as a sexually violent predator ("SVP") under Megan's Law, and further, that Appellant might be impacted by "collateral immigration consequences." Order, 6/3/15, at 2.

Appellant filed an untimely post-sentence motion asking the court to modify his sentence or, in the alternative, permit him to withdraw his plea as it was not entered into voluntarily, knowingly, and intelligently. He alleged that he was incorrectly informed that he would be deported immediately, but [he] subsequently learned that he would have to serve his sentence first. The court denied him the right to file the motion *nunc pro tunc*, but granted him leave to file a PCRA[1] petition.

On August 31, 2015, Appellant filed a [timely] counseled PCRA petition in which he alleged that he pled guilty based upon statements made by his counsel[.][2] After a hearing, the court

_____

[1] Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.

[2] Specifically, in his first PCRA petition, Appellant averred his trial counsel was ineffective in misleading him to believe that, in exchange for pleading guilty,

*(Footnote Continued Next Page)*

found no ineffectiveness and denied relief. On appeal, this Court affirmed. ***Commonwealth v. Saleem***, 168 A.3d 357 (Pa.Super. 2017) (unpublished memorandum). Appellant filed a second *pro se* PCRA petition on April 6, 2017, which the PCRA court dismissed without a hearing as untimely. We affirmed on May 1, 2018. ***Commonwealth v. Saleem***, 192 A.3d 207 (Pa.Super. 2018) (unpublished memorandum).

On May 10, 2018, Appellant filed a petition for writ of *habeas corpus* challenging his status as an SVP after ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017) (finding SORNA registration punitive). The PCRA court appointed counsel and directed him to file an amended PCRA petition. Instead, counsel sought leave to withdraw pursuant to ***Turner/Finley***, attached a copy of his no-merit letter to his petition, and served it upon Appellant. Counsel represented therein that he had conducted a review of the record and concluded that there were no issues of merit as the petition was untimely. After reviewing counsel's petition to withdraw, his no-merit letter, and the record, the court granted the petition. The court concluded that after ***Muniz***, Appellant's claims were cognizable under the PCRA, applied the PCRA's time limitations, and dismissed the petition as untimely.

***Commonwealth v. Saleem***, 2019 WL 1754670, 1582 MDA 2018, at 1-2 (Pa.Super. filed 4/17/2019) (unpublished memorandum) (footnotes added).

Appellant appealed the dismissal of his PCRA petition, and this Court affirmed. ***Id.*** Specifically, we held the PCRA court properly treated Appellant's petition under the auspices of the PCRA, and the petition was untimely filed. ***Id.*** Appellant did not file a petition for allowance of appeal with our Supreme Court.

---

he would be deported to Pakistan without serving any sentence of imprisonment in the United States in connection with his guilty plea.

- 3 -

On August 17, 2020, at both lower court docket numbers, Appellant filed a *pro se* petition for writ of *habeas corpus*.[3]  Therein, Appellant contended he entered a negotiated guilty plea, which required that he be deported to Pakistan prior to serving any period of incarceration in the United States in connection with his instant crimes. He further contended that, prior to sentencing and per the plea agreement, he was taken into custody by U.S. Immigration and Customs Enforcement ("ICE") officials; however, before he could be deported, he was returned to Lebanon County for sentencing in the instant matter. Thereafter, Appellant was sentenced and, instead of being deported to Pakistan, he was placed in jail to serve his sentence for the instant crimes.  Appellant contended immediate deportation was a bargained-for term of his negotiated plea agreement, and he sought specific enforcement thereof.

On August 25, 2020, at both lower court docket numbers, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition for writ of *habeas corpus* without a hearing, explaining that it was treating the petition as an untimely PCRA petition.  Appellant filed premature notices of appeal from the August 25, 2020, notice to dismiss.  By orders entered on November 17, 2020, this Court dismissed Appellant's premature appeals and

_____

[3] Although this *pro se* document was time-stamped August 19, 2020, we shall deem it to have been filed on August 17, 2020, when it was handed to prison authorities. ***See Commonwealth v. Wilson***, 911 A.2d 942, 944 (Pa.Super. 2006) (holding under the prison mailbox rule a *pro se* document is deemed filed on the date a prisoner deposits the document with the proper prison authority).

directed the PCRA court to enter a final determination with regard to Appellant's August 17, 2020, petition.

On December 7, 2020, the PCRA court entered a final order dismissing the petition for writ of *habeas corpus* at both lower court docket numbers. Appellant filed separate timely notices of appeal.[4]

On appeal, Appellant contends the PCRA court erred by treating his petition for writ of *habeas corpus* under the auspices of the PCRA. He further contends he is entitled to specific performance of his negotiated plea agreement in the form of immediate release from prison in the United States and deportation to Pakistan.

Initially, we agree with Appellant that the lower court erred by treating his request for specific enforcement of his plea agreement as an untimely PCRA claim. Relevantly, this Court has held the following:

> A petition for collateral relief will generally be considered a PCRA petition if it raises issues cognizable under the PCRA. **See** 42 Pa.C.S.A. § 9542 (stating PCRA shall be sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for same purpose). The plain language of the PCRA mandates that claims which could be brought under the PCRA, must be brought under the PCRA.
>
> * * *
>
> On the other hand, a collateral petition to enforce a plea agreement is regularly treated as outside the ambit of the PCRA and under the contractual enforcement theory of specific

---

[4] We note Appellant listed a single trial court docket number in each of his notices of appeal in compliance with **Commonwealth v. Walker**, 646 Pa. 456, 185 A.3d 969 (2018). Thereafter, this Court consolidated the appeals.

- 5 -

performance. *See, e.g., Commonwealth v. Martinez*, 637 Pa. 208, 147 A.3d 517 (2016); *Commonwealth v. Fernandez*, 195 A.3d 299 (Pa.Super. 2018) (*en banc*). The designation of the petition "does not preclude a court from deducing the proper nature of a pleading." *Commonwealth v. Porter*, 613 Pa. 510, 35 A.3d 4, 12 (2012).

*Commonwealth v. Kerns*, 220 A.3d 607, 611-12 (Pa.Super. 2019) (citations omitted).

In the case *sub judice*, Appellant framed his sole issue as one seeking specific performance of his negotiated plea agreement. We agree with Appellant that the lower court erred in treating his claim under the auspices of the PCRA. *See id.* Nevertheless, Appellant is not entitled to relief.

Contract interpretation is a question of law, so "[o]ur standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary." *Gillard v. Martin*, 13 A.3d 482, 487 (Pa.Super. 2010).

> Assuming the plea agreement is legally possible to fulfill, when the parties enter the plea agreement and the court accepts and approves the plea, then the parties and the court must abide by the terms of the agreement. Specific enforcement of valid plea bargains is a matter of fundamental fairness. The terms of plea agreements are not limited to the withdrawal of charges, or the length of a sentence. Parties may agree to—and seek enforcement of—terms that fall outside these areas.
>
> Although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards. Furthermore, disputes over any particular term of a plea agreement must be resolved by objective standards. A determination of exactly what promises constitute the plea bargain must be based upon the totality of the

surrounding circumstances and involves a case-by-case adjudication.

Any ambiguities in the terms of the plea agreement will be construed against the Government. Nevertheless, the agreement itself controls where its language sets out the terms of the bargain with specificity. Regarding the Commonwealth's duty to honor plea agreements, well-settled Pennsylvania law states:

Our courts have demanded strict compliance with that duty in order to avoid any possible perversion of the plea bargaining system, evidencing the concern that a defendant might be coerced into a bargain or fraudulently induced to give up the very valued constitutional guarantees attendant the right to trial by jury.

Whether a particular plea agreement has been breached depends on what the parties to the agreement reasonably understood to be the terms of the agreement.

*Kerns*, 220 A.3d at 612-13 (quoting *Commonwealth v. Farabaugh*, 136 A.3d 995, 1001-02 (Pa.Super. 2016)).

Here, Appellant asserts his plea agreement contained a bargained-for term in which he would be immediately deported to Pakistan as opposed to placed in prison in the United States. We find no merit to this claim.

During Appellant's guilty plea hearing, the Commonwealth agreed that Appellant was entering an open plea and could receive any sentence up to the maximum sentence permitted by the law. N.T., 4/21/15, at 2. The Commonwealth indicated it had "no objection to immediate deportation in [Appellant's] particular circumstance[.]" *Id.*

Further, the trial court asked Appellant if he understood "the consequences of potential deportation[,]" and Appellant answered, "Yes." *Id.* at 3. Appellant indicated he had no questions and wished to plead guilty. *Id.* at 4. Moreover, Appellant completed a written plea colloquy in which he acknowledged that his "guilty plea and/or sentencing may affect [his] immigration status and could result in deportation proceedings from the Federal Government[.]" Written Guilty Plea, filed 4/21/15, at 5.

Thereafter, during Appellant's sentencing hearing, the following relevant exchange occurred between the trial court and the assistant district attorney ("ADA"):

> **THE COURT:** Okay. There's an airline ticket that's already been purchased and there's been agents already assigned to escort him back to Pakistan?
>
> **[ADA]:** Yes, Your Honor. And I can fill you in a little bit about that history if you'd like me to.
>
> **THE COURT:** I would.
>
> ***
>
> **[ADA]:** As you are most likely aware, back in 2009, [Appellant] was convicted of two counts of indecent assault. That was a bench trial before Judge Kline. And at that point in time there were two women who were employees of [Appellant] who came in and testified as to the sexual contact that was occurring at the workplace during that time frame.
>
> After that case had occurred, I know that immigration had gotten involved and there was discussion about at that point in time whether or not deportation was appropriate. At that point in time, based off of the way the laws were outlined, they determined that deportation was not appropriate.
>
> **THE COURT:** Which completely flabbergasts me.
>
> **[ADA]:** I can understand why you would say that.

**THE COURT:** You have an individual who comes in and sexually assaults somebody in our country and we let him stay. That just makes no sense.

**[ADA]:** I do not disagree with you on that. The laws have now—the immigration laws have now changed and those two offenses from 2009 are really what's occurring with the deportation process right now. We ended up having a new assault reported. Again, the victim is here today. We filed charges—

**THE COURT:** Two. Two new assaults.

**[ADA]:** Right….During this process I've been in communication with the ICE agent who's been working this case. And that's why I said, the laws have really changed. The immigration laws have changed. And as a result, they basically detained [Appellant] based off those 2009 cases and that's where the deportation proceedings have occurred.

At this point, [Appellant] has waived whatever rights he had to fight that deportation as it relates to that old case. And what the ICE agents have explained is—and I have had very brief conversations with the ICE attorney—is as a result of those convictions and his waiving of his rights for deportation, that's where he's looking to be removed within the next week.

And so in speaking with them, my—what has been explained to me is really we have to turn him back over to the Federal Government by tomorrow. They at one point weren't even sure they were going to let us have him to really kind of get here and try to get some closure and some finalization.

N.T., 6/3/15, at 4-7. The ADA noted that deportation determinations were within the purview of the federal government. *Id.* at 7-8.

Based on the aforementioned, we find no merit to Appellant's claim that his plea agreement contained a bargained-for term in which he would be immediately deported to Pakistan without serving a prison sentence in the United States in connection with the instant crimes. While the Commonwealth indicated it would not object to Appellant's immediate deportation, the record

reflects that Appellant was informed deportation was a "potential" consequence of his guilty plea. Moreover, during Appellant's sentencing hearing, the Commonwealth acknowledged that deportation was within the purview of the federal government.

Further, the fact ICE had commenced deportation proceedings against Appellant in connection with his prior convictions does not alter our conclusion. As the PCRA court indicated in denying Appellant's first PCRA petition, while the ADA and Appellant believed Appellant would be deported due to his prior convictions, deportation was not a condition of Appellant's instant guilty plea. **See** PCRA Opinion, filed 7/22/16, at 17. In fact, as the PCRA court noted, deportation decisions are beyond the control of the District Attorney's Office, and Appellant's trial counsel admitted he informed Appellant of this fact prior to the entry of the guilty plea. **See id.** at 17-18.

Based on the aforementioned, we conclude the lower court erred by treating Appellant's petition for writ of *habeas corpus* as an untimely PCRA petition. However, we conclude the court properly dismissed the petition. Simply put, Appellant's request for specific performance of his plea agreement is meritless, and, therefore, we affirm. **See Commonwealth v. Hutchins**, 760 A.2d 50, 54 (Pa.Super. 2000) ("[T]his Court may affirm the decision of the PCRA [c]ourt if it is correct on any basis.") (citations omitted)).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/06/2021